UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CONSOLIDATED METCO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br><br>Defendant. | Court No. 26-03018 |

# COMPLAINT

Plaintiff Consolidated Metco, Inc. ("ConMet"), by and through its counsel, alleges as follows:

## I.

## DECISION TO BE REVIEWED

1. This action seeks judicial review to challenge U.S. Customs and Border Protection's ("CBP") denial of ConMet's Protest No. 230426103930 under the Tariff Act of 1930, as amended (the "Act"), section 515, 19 U.S.C. § 1515. ConMet challenges CBP's wrongful determination that the country of origin of ConMet's wheel hub assemblies is China, rather than Mexico, and CBP's resulting unlawful assessment of additional duties, including under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706 ("IEEPA") and Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411 ("Section 301 duties").

## II.

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a), which provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." ConMet's Protest No. 230426103930 was denied by CBP pursuant to 19 U.S.C. § 1515. ConMet challenges CBP's denial of Protest No. 230426103930. Jurisdiction in this Court is, therefore, proper under 28 U.S.C. § 1581(a).

## III.

## STANDING

3. ConMet is the importer of record that filed Protest No. 230426103930 and the real party in interest in connection with the underlying denial of the Protest at issue in this action.

4. ConMet has standing to commence this action pursuant to 28 U.S.C. § 2631(a).

## IV.

## TIMELINESS OF THIS ACTION

5. Protest No. 230426103930 was denied on May 8, 2026.

6. ConMet commenced this action pursuant to section 515 of the Act, 19 U.S.C. § 1515, by filing a summons on May 29, 2026, within 180 days of the date of the denial of Protest No. 230426103930, as required by 28 U.S.C. §§ 2632(b), 2636(a) and Rule 3(a)(1) of the Rules of the U.S. Court of International Trade. Thus, this lawsuit is timely filed pursuant to 28 U.S.C. §§ 2632(b), 2636(a) and USCIT R. 3(a)(1) and USCIT R. 83.

7. All liquidated duties, taxes and charges have been paid prior to the commencement of this action.

## V.

## FACTUAL BACKGROUND AND DESCRIPTION OF MERCHANDISE

8. ConMet is headquartered at 5701 SE Columbia Way, Vancouver, Washington 98661.

9. ConMet is a manufacturer of automotive wheel-end products for commercial vehicles. ConMet's products include Generation 0 ("Gen 0") multifunctional automotive wheel hub assemblies, marketed under the ConMet PreSet and PreSet Plus brand names, among other products.

10. ConMet's Gen 0 wheel hub assemblies are custom-configured products produced from hundreds of unique combinations of function-contributing components. The components include, among others, a generic iron casting, ABS tone ring, wheel studs, axle studs, oil seal, oil port plug, disc brake rotor or brake drum, spindle nut safety system, tapered roller bearing cups and cones, and, for PreSet and PreSet Plus products, a micron-precise proprietary bearing spacer.

11. ConMet sources certain components, including iron castings, from China and other countries. These components are shipped to ConMet's manufacturing facility in Mexico, operated by ConMet de Mexico S.A. de C.V. ("ConMet de Mexico") in Mexico, for manufacture into finished Gen 0 wheel hub assemblies.

12. ConMet imports the wheel hub assemblies manufactured by ConMet de Mexico into the United States from Mexico.

13. The manufacturing operations performed at ConMet de Mexico are proprietary, trade-secret, highly technical, and commercially significant production processes that represent a substantial investment in engineering, technology, software development, and industrial infrastructure. Production is carried out on custom-designed manufacturing equipment configured within fully integrated production lines valued in the millions of dollars. The production lines utilize more than 250 calibrated inline electronic measuring, positioning, validation, and quality-control sensors operating at micron-level precision to continuously monitor and control critical manufacturing parmeters. The manufacturing environment is directed through a sophisticated SCADA-controlled software system incorporationg thousands of lines of custom U.S. developed software code uniquely programmed for each product. Collectively, these integrated manufacturing operations require specialized expertise, advanced automation, precision process controls and continuous quality verification, resulting in a meaningful and technologically complex transformation of materials into a finished product with distinct physical characteristics, performance capabilities and commercial identities.

14. Among the manufacturing steps performed in Mexico are: preheating and washing the casting; bearing cup insertion and ABS tone ring installation; installation of wheel studs; oil seal insertion; axle stud insertion; insertion of proprietary bearing spacer and bearing cones; testing and final inspection; and, as applicable, rotor or drum and spindle nut safety system installation. These are complex operations and require precision tolerances measured in microns (one millionth of one meter).

15. ConMet de Mexico's manufacturing operations permanently and irreversibly integrate the individual components into a multi-functional, customer-specific, safety-regulated

wheel hub assembly with a unique serial number permanently embedded into each wheel hub assembly the customer purchases.

16. Before ConMet de Mexico performs its manufacturing operations, the components imported into Mexico are general-purpose inputs.

17. After processing, these components imported into Mexico lose their prior individual character and acquire a specific use as part of a custom finished wheel hub assembly for Class 8 commercial vehicles.

18. The finished assembly is a new and different article of commerce with a different name, character, and use from any of its constituent components.

19. The iron casting component when initially imported into Mexico is nonfunctional as it cannot rotate, support vehicle loads, be torqued onto a spindle, be installed or mounted to a vehicle, or be used on a vehicle without the other components and further processing.

20. On December 21, 2024 ConMet entered a shipment of Gen 0 wheel hub assemblies into the United States through the port of Laredo, Texas (Port Code 2304) on Entry No. 101-0739457-9. The products were imported from ConMet de Mexico S.A. de C.V. with a country of origin declared as Mexico and an entered value of approximately $35,953. The products were classified under HTSUS S8716.90.5060.

21. The "S" special program indicator ("SPI") listed before the tariff classification on each entry asserts a claim for preferential tariff treatment under the US-Mexico-Canada Free Trade Agreement ("USMCA") per Harmonized Tariff Schedule of the United States General Note 11 as well as 19 CFR 182.11(b).

22. CBP liquidated the entry on October 17, 2025, with the country of origin changed to China and the S SPI removed, resulting in the assessment of regular duties at the rate of 3.1% and Section 301 duties at the rate of 25%. The Section 301 duties that CBP charged apply to Chinese origin products and do not apply to merchandise of Mexican origin.

23. On April 4, 2026, ConMet timely filed Protest No. 230426103930 within 180 days of the date of liquidation of the entry that is the subject to this lawsuit.

24. CBP denied Protest No. 230426103930 on May 8, 2026.

## VI.

## STATEMENT OF THE CLAIMS

### COUNT I – CBP IMPROPERLY REMOVED USMCA TREATMENT

25. ConMet herein incorporates by reference paragraphs 1 through 24, *supra*, of this complaint.

26. Subpart G of 19 CFR 182 Customs' regulations sets forth the procedures CBP is required to follow prior to denying any USMCA preferential tariff claim.

27. At no point from the date of entry to the date of liquidation did CBP comply with the requirements of Subpart G to 19 CFR 182.

28. Because CBP did not conduct any USMCA origin verification, CBP had no legal authority to deny ConMet's claim for USMCA preferential tariff treatment and, as a result, lacked authority under the USMCA to charge any additional duties. Accordingly, CBP's decision to liquidate the entry at issue with country of origin as China is illegal.

**COUNT II – CBP IMPROPERLY DETERMINED THE GOODS ARE NOT OF MEXICAN ORIGIN**

29. ConMet herein incorporates by reference paragraphs 1 through 24, *supra*, of this complaint.

30. Under the substantial transformation test, a substantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use differing from the original materials. *See Belcrest Linens v. United States*, 741 F.2d 1368, 1372 (Fed. Cir. 1984); *National Hand Tool Corp. v. United States*, 16 CIT 308 (1992).

31. ConMet's Mexico manufacturing operations substantially transform the individual, general-purpose components into a finished, serialized custom-configured Gen 0 wheel hub assembly that is a new and different article of commerce with a distinct name, character, and use compared to its components.

32. Before the Mexico manufacturing operations, the individual components cannot function as a wheel hub assembly. After ConMet's proprietary Mexico manufacturing, the resulting product is a safety-critical, customer-specific wheel hub assembly for Class 8 commercial vehicles—a fundamentally different article of commerce.

33. CBP's denial of Protest No. 230426103930 was unlawful because CBP erroneously concluded that no substantial transformation occurred in Mexico, contrary to the record evidence demonstrating the complexity, precision, and transformative nature of ConMet's Mexico manufacturing operations.

**COUNT III – CBP IMPROPERLY APPLIED SECTION 301 TARIFFS TO MEXICAN ORIGIN GOODS**

34. ConMet herein incorporates by reference paragraphs 1 through 24, *supra*, of this complaint.

35. The Section 301 duties imposed on Chinese-origin merchandise pursuant to actions taken under Section 301 of the Trade Act of 1974 apply only to goods that are products of China.

36. As set forth above, the Gen 0 wheel hub assemblies on the entries underlying Protest No. 230426103930 are USMCA originating products under General Note 11 of the HTSUS and are Mexican origin because the components imported into Mexico were substantially transformed in Mexico into new articles of commerce.

37. CBP's assessment of Section 301 duties on ConMet's Mexican-origin merchandise was unlawful because these duties are applicable only to Chinese-origin goods, and ConMet's Gen 0 wheel hub assemblies are USMCA, Mexican origin goods.

**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, and as challenged herein, ConMet respectfully prays that this Court:

(1) Direct CBP to grant Protest No. 230426103930 with regard to Entry No. 101-0739457-9;

(2) Direct CBP to reliquidate Entry No. 101-0739457-9 based on how the goods were originally entered, i.e., with a country of origin of Mexico, with ConMet's entered tariff

classifications (including with the USMCA SPI indicator "S") and without the application of regular tariffs, IEEPA tariffs, and Section 301 duties;

(3) Direct CBP to refund all unlawfully collected duties, fees, charges, and interest assessed as a result of CBP's erroneous China-origin determination, together with interest as provided by law;

(4) Provide such other and further relief as this honorable Court deems just and proper.

Respectfully submitted,

/s/ Michael Roll
Michael Roll
ROLL & HARRIS LLP
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
310-294-9501
michael.roll@thetradelawfirm.com
Counsel to Plaintiff

Date: September 15, 2026